**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)**

| | |
|---|---|
| WILLIAM L. POSTON<br>1018 Sweepstakes Lane<br>Florissant, Missouri 63034<br><br>　　　　　Plaintiff,<br><br>　　　　　v.<br><br>AIRLINE TARIFF PUBLISHING COMPANY<br>45005 Aviation Drive<br>Dulles, Virginia 20166<br><br>Serve: CT Corporation System<br>　　　　Registered Agent<br>　　　　4701 Cox Road, Suite 285<br>　　　　Glen Allen, Virginia 23060<br><br>　　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)　　Civil Action No. _____<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

COMES NOW THE PLAINTIFF, WILLIAM L. POSTON, by counsel, and moves this

Court for entry of judgment in his favor, and against the Defendant, AIRLINE TARIFF

PUBLISHING COMPANY, and in support of such motion alleges and avers as follows:

## NATURE OF ACTION

This action states claims for discrimination, hostile work environment, and retaliation based

on Plaintiff's age and race, during the course of Plaintiff's employment, in violation of the Age

Discrimination in Employment Act of 1967, as amended, 29 U.S.C. §§ 621-34 (the "ADEA"), and

in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*.

This action also states claims for discrimination and retaliation in the course of employment based on race, in violation of the Virginia Human Rights Act, as amended in July 2020 by the Virginia Values Act (Senate Bill 868), codified at Va. Code § 2.2-3900, *et seq.*

## PARTIES

1.     Plaintiff William L. Poston ("Mr. Poston") is a resident and citizen of the State of Missouri.  At all times relevant hereto, Mr. Poston was (and is) employed by, and was (and is) performing work for, Defendant in this judicial district, and was (and is) subject to a reporting line in this judicial district, out of Defendant's headquarters located in Loudoun (Dulles) County, in the Commonwealth of Virginia.

2.     Mr. Poston is a 61 year old African-American/Black male.  At all times relevant to these claims, Mr. Poston was more than 40 years of age.

3.     Mr. Poston is an "employee" of the Defendant within the meaning of 42 U.S.C. § 2000e(f) and an "eligible employee" within the meaning of 29 U.S.C. §2611(2)(A).

4.     Defendant Airline Tariff Publishing Company ("ATPCO") engages in the collection and distribution of fare and fare-related data for the airline and travel industry.

5.     ATPCO is an "employer" within the meaning of 42 U.S.C. §2000e(b) and 29 U.S.C. §2611(4)(A).

6.     ATPCO is a foreign (D.C.) company registered and in good standing in the Commonwealth of Virginia.  ATPCO maintains an agent for service of process in the Commonwealth of Virginia

7.     ATPCO is engaged in an industry affecting commerce and has had more than 15 employees in each of twenty or more calendar weeks in the current or preceding year, within the meaning of 42 U.S.C. § 2000e(b).

8.      ATPCO is engaged in an industry affecting commerce and has had more than 50 employees for each working day in each of twenty or more calendar weeks in the current or preceding year, within the meaning of 29 U.S.C. § 2611 (4) (A).

9.      ATPCO has had 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year, and was Ms. Romano's "employer" within the meaning of Va. Code § 2.2-3905.

## JURISDICTION AND VENUE

10.      The amount in controversy in this action exceeds the jurisdictional minimum amount for this Court.

11.      The causes of action alleged in this action arose out of this judicial district, in Loudoun County, in the Commonwealth of Virginia.

12.      This Court has jurisdiction over Mr. Poston's claims under the ADEA pursuant to 29 U.S.C. § 626(c)(1), Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, *et seq*., and under Virginia Human Rights Act, as amended in July 2020 by the Virginia Values Act (Senate Bill 868), codified at Va. Code § 2.2-3900, *et seq*.

13.      Venue is proper in this Court pursuant to 28 U.S.C. § 1331 and 1343(4).

14.      Jurisdiction and venue are proper in this Court.

## PROCEDURAL STATUS

15.      Mr. Poston timely filed a Charge of Discrimination with the United States Equal Opportunity Commission ("EEOC"), and with the Office of the Attorney General, Virginia Office of Civil Rights ("OAG"), on July 19, 2022.

16.     By letter dated September 20, 2022, the OAG waived its right to 60 days of exclusive jurisdiction to process the Charge, and deferred investigation of Plaintiff's claims to the EEOC pursuant to the work-sharing agreement between the agencies.

17.     Over 60 days has passed since Mr. Poston filed his Charge, and the EEOC issued a Right to Sue dated January 20, 2023.

18.     This action is timely filed.

## **BACKGROUND**

19.     Mr. Poston began his employment with the Airline Tariff Publishing Company (ATPCO) on January 13, 2020 as a Senior DB2 Database Administrator in the IT/Data Operations Division.  His immediate supervisor was (and is) Rajesh Samineni ("Mr. Samineni"), Director of Data Platforms.  Mr. Samineni is significantly younger than Mr. Poston (in his early 40s), and is not African-American.

20.     At all times during his employment, Mr. Poston has performed well, and received positive performance reviews.   Mr. Poston has never been subjected to any adverse employment action as the result of any performance related issues.

21.     From the outset of his employment, Mr. Poston was treated in a hostile and disparate manner, based on his age and race.  Mr. Poston raised and reported these issues consistently throughout his employment.

22.     On the day Mr. Poston was hired, he was assigned to a project that was impossible to complete.  He was set up for failure from the start.

23.     The project was only made worse when, on March 18, 2021, Cheryl Eckert (Caucasian) and Mr. Samineni teamed up to undermine Mr. Poston's progress on the "Reorganizing DB2 Table Datasets" project.  Even though this was a routine exercise, and one

that Mr. Poston had learned very early in his DBA career, Ms. Eckert reported to Mr. Samineni that Mr. Poston was doing it incorrectly. Mr. Samineni believed Ms. Eckert over Mr. Poston, despite his knowledge and experience, and Mr. Poston spent the better part of an hour explaining to Mr. Samineni that he was, in fact, doing it correctly. Conrad Martinez ("Mr. Martinez") (Principal Database Administrator, in his 50s) agreed with Mr. Poston, and Mr. Poston took the extra step of contacting the vendor who also agreed that his approach was the correct one. If Mr. Poston had followed Ms. Eckert's demands, it would have resulted in a lot of wasted time and unnecessary work.

24.    In November 2021, after almost a year of tireless effort working on the product standardization project (which was in much better shape than it was before Mr. Poston started), Mr. Poston finally emailed Mr. Samineni and asked that the project be assigned to someone else. Mr. Poston told Mr. Samineni that the project goal was unattainable in the current ATPCO environment and with the current team culture. In addition, Mr. Poston explained that the project was very manual intensive without the tools to automate the process (making it unrealistic and unfair for one team member to accomplish alone). The individual who had been assigned to this project before Mr. Poston retired in 2020, at age 65, and he, also, told Mr. Samineni that he would never be able to complete this project.

25.    Mr. Poston also told Mr. Samineni about the challenges of working with Cheryl Eckert – something other employees reported to Mr. Poston as well. In response, Mr. Samineni told Mr. Poston to "lighten up," and did nothing to address the issue.

26.    Ultimately, instead of assigning someone else on the team to work the project, the project was ended. Mr. Samineni knew the project was futile, and did not subject any of the

other team members, who were younger than Mr. Poston, and none of whom were African-American/Black, to the impossible task, or set them up for failure.

27.     Throughout his employment, Mr. Poston verbally reported and made complaints on numerous instances about the hostile work environment, including during 1:1 meetings and Microsoft Teams meetings with Mr. Samineni.  Nothing was ever done.  In each such instance, Mr. Poston told Mr. Samineni that he could see a pattern, and that he and Ms. Eckert treated Mr. Poston in a disparate manner.  Mr. Poston told Mr. Samineni that if nothing was done to remedy the behavior, he would report it to HR.  Mr. Poston also told Mr. Samineni that other employees had noticed how he was being  treated and commiserated by telling him to "hang in there."

28.     In April 2021, Maya Bordeaux ("Ms. Bordeaux") (African American) was hired as the new Chief People and Culture Officer.  One of the first tasks she undertook was to organize focus groups with randomly selected employees representing a statistical sample size. The purpose of the focus groups was to gain more insights into employees' experiences at ATPCO with diversity, equity, inclusion, and belonging.  Ms. Bordeaux stated intent was to analyze the situation and identify the greatest opportunities for improvement.

29.     As an African American male, and a newly hired employee, Mr. Poston was selected for the focus groups. He participated by sharing the challenging opportunities he had faced since becoming employed at ATPCO – specifically, the hostile work environment.  Other employees in the focus group agreed that observed and/or experienced some of the same issues in their areas. Ms. Bordeaux actually apologized to Mr. Poston, saying,  "I am sorry you had to go through that."

30.     Mr. Poston hoped and believed that the issues he reported would be addressed, and that reporting the issues to be addressed would ultimately make ATPCO a better organization.  However, the issues were never addressed.

31.     One of the outputs from the focus groups was Ms. Bordeaux's creation of a Diversity, Equity & Inclusion (DEI) Strategy Design Committee.  When she asked for volunteers, Mr. Poston was selected.  His goal was to contribute to making ATPCO a great place to work.  Mr. Poston attended a few meetings and continued to provide his candid, professional observations.  After awhile, though, Mr. Poston realized he was no longer receiving invites to the DEI Committee meetings.  When he checked the list of Committee members, his name had been replaced with another African American employee with a very similar name.  When Mr. Poston reached out to this employee to ask if he had joined the DEI Committee, he replied that his boss had signed him up but that he was not interested in participating.

32.     No one ever asked or requested that Mr. Poston step down from the Committee – his name was simply removed without his knowledge.  This demonstrates both ATPCO's lack of transparency and lack of commitment in wanting to make true changes  to address DEI issues at ATPOC, and only underscored the discriminatory and hostile work environment.

33.     On June 8, 2021, Ms. Eckert was unprofessional and uncooperative towards Mr. Poston on a project that is in her domain.  She was not forthcoming with answers to questions he had, and spoke down to him in email communications as if he was her subordinate. Ms. Eckert's behavior towards Mr. Poston was emulated by employees in the training department, and they also were not cooperative.  It was only after Mr. Poston reached out to Mr. Samineni that he was given a contact to work with.

34.    June 23, 2021, during a phone call with Conrad Martinez, Mr. Martinez informed Mr. Poston that he believed Ms. Eckert had intentionally neglected to share some information on a project ("NEW Job Aid – RTST"), so that Mr. Poston would fail. Specifically, Ms. Eckert did not share with Mr. Poston how and where to define the new application id in RTST, even though she was the "Subject Matter Expert" on the RTST environment.

35.    On July 12, 2021, Mr. Samineni reprimanded Mr. Poston in an email regarding how he was communicating with a team member. However, Mr. Samineni did not treat others who communicated in a less than professional manner or were discourteous towards him in the same manner, and did not reprimand them in writing for this same issue.

36.    On September 7, 2021, Cheryl Eckert sent out a team wide email detailing Mr. Poston's age by referring to his "milestone" birthday. This was followed by several other team members reading the information and "replying all" to the team email acknowledging Mr. Poston's "milestone" birthday.

37.    Mr. Poston forwarded the email to Ms. Bordeaux, with "COMPLAINT" in the subject line, letting her know that he had previously indicated that he did not wish to participate in birthday celebrations at work. Mr. Poston's age is his own private information, and the fact that the email from Ms. Eckert referred to a "milestone" birthday indicated to him that his private information (his age) had been shared with his co-workers, and not by him.

38.    Ms. Bordeaux replied that she was referring his complaint to Lorraine Evans ("Ms. Evans"), Director, People & Culture, to address this matter. She also stated that "typically" employees "have to come forward to say they don't want to be recognized or celebrated" – which is exactly what Mr. Poston did. When Mr. Poston met with Ms. Evans on September 21, 2021, she let him know that the "solution" would be to allow employees to opt

out of sharing personal milestones or events (again, something Mr. Poston had already done by asking the company not to share his personal information, but it was shared anyway).  Mr. Poston suggested that the safer practice would be not to share the personal information of any employee who did not opt IN, since Mr. Poston should not have to opt out of having a company share his personal information with other employees, since it is something that should not be done in the first place.

39.    Despite this "solution," on October 24, 2021, Ms. Eckert sent out a similar email to the team, announcing the "milestone" birthday of a co-worker, Jim Woodhams.  Mr. Poston forwarded the email to Ms. Evans and Ms. Bordeaux informing her that in addition to another age related email, during a Microsoft Teams meeting with Ms. Eckert, Jim Woodhams, and Conrad Martinez on October 27, 2021, Ms. Eckert commented that "Jim is catching up" to Mr. Poston in terms of age with his "milestone" birthday.

40.    On November 8, 2021, Ms. Eckert sent out an email berating and belittling Mr. Poston for implementing database changes she did not agree with, saying, "if you are not understanding…" and telling him to "cease  and desist" any further efforts.  She pointedly copied Mr. Poston's supervisor, Mr. Samineni, and a co-worker, Anup Kumar, rather than addressing the issue with him privately.

41.    Mr. Poston responded, owning up to his mistake, apologizing several times in his email, and stating that no further changes would be made without prior review.  Ms. Eckert responded, asking for a summary of all recent changes Mr. Poston had made, implying that she would have to correct/verify them all with his co-worker, Anup Kumar.  In a subsequent response (also copied to his supervisor), Ms. Eckert stated she would "rather work with Anup" (who is younger than Mr. Poston, and not African-American/Black) than Mr. Poston.

42.     During the email exchange, Mr. Samineni directed Ms. Eckert to stop sending emails, but she persisted berating Mr. Poston over email, copying Mr. Samineni and Anup Kumar each time.  Ms. Eckert did not speak to the other Database Administrator – Conrad Martinez – who is younger than Mr. Poston, or employees who are not African-American/Black, in such a manner.

43.     In sharp contrast, as Mr. Poston was able to observe from being on many email chains with Ms. Eckert since they were part of the same team, Ms. Eckert was polite and professional when working and communicating with others on the team, who were younger than Mr. Poston, and not African-American/Black.

44.     Mr. Poston is aware that two African-American System Administrators also experienced similar treatment and a similar work environment when working with Ms. Eckert and Mr. Samineni, finding them both unnecessarily and inexplicably difficult to work with.  Mr. Poston is also aware that an African-American employee who was a DBA at ATPCO prior to his employment took an early retirement as a result of the difficult team environment.

45.     When Mr. Poston went to his supervisor, Mr. Samineni, with his concerns and complaints about the discrimination and hostile work environment, he communicated to Mr. Samineni that if they could not find a resolution, that he planned to reach out to HR.  During their Teams meeting on November 15, 20021, Mr. Samineni asked Mr. Poston to give him some time to think about it and solicit advice from a colleague on how to handle the situation before Mr. Poston went to HR.  Then, instead of coming back to Mr. Poston with a solution or suggestion, Mr. Samineni circumvented Mr. Poston and went to HR before Mr. Poston could, despite telling Mr. Poston that he was not going to reach out to HR.

10

46.    Following that, on December 1, 2021, Mr. Poston sent an email to Madelene Tomseth ("Ms. Tomseth") in HR, filing an official HR complaint of discrimination and hostile work environment.

47.    On December 10, 2021, Mr. Poston met with Ms. Tomseth, and verbally expressed his concerns.  When Mr. Poston asked Ms. Tomseth if they could record the meeting, she refused.  It was at this meeting where Mr. Poston discovered that HR and Mr. Samineni were attempting to change the narrative and fabricate a scenario where ATPCO simply had two employees that just did not work well together (Mr. Poston and Ms. Eckert).

48.    During the meeting, Mr. Poston raised the issues of his concerns and complaints regarding Ms. Eckert's emails and comments regarding his age (and that of his co-worker), and the hostile work environment created and maintained by Ms. Eckert and Mr. Samineni, which made it difficult for him to do his job.  Mr. Poston also brought up the fact that much of their work comes from the Data Architects (Anup Kumar), but that all of the work was being directed to Ms. Eckert, and Mr. Poston was being ignored and left out.  When Mr. Poston attempted to schedule meetings to discuss this, Mr. Samineni was uncooperative.

49.    Mr. Samineni and Ms. Eckert were both fully aware that Mr. Poston would be evaluated based on his contributions.  It was difficult for Mr. Poston to make any meaningful contributions when work was being diverted away from him.

50.    During the meeting, Mr. Poston was shocked to learn that Ms. Eckert (who was aware Mr. Poston had complained about her) had filed multiple complaints against him.  Mr. Poston was not provided with any details of the complaints filed against him, despite his request.

51.    On December 13, 2021, Mr. Poston forwarded a string of hostile emails he had received from Ms. Eckert to Ms. Tomseth.  Mr. Poston was still in shock that a fellow DBA, and

one who was not his supervisor or superior, would communicate with him in that manner (and be allowed to get away with it). Ms. Eckert's tone did not encourage a collaborative environment and instead, had the opposite effect of creating a hostile work environment.

52.     Mr. Poston had a follow-up meeting with Ms. Tomseth via Microsoft Teams on January 14, 2022. He again asked her to provide him with her notes of their prior meeting (since his request to record it was denied), but she refused.

53.     Ms. Tomseth also told Mr. Poston during the meeting that she had spoken to Mr. Samineni to address the hostile work environment, but she did not provide the details of that conversation, or what steps would be taken to correct it.

54.     On January 18, 2022, Mr. Poston emailed Ms. Tomseth again asking for details of the complaints about him filed by Ms. Eckert, as well as any notes or discussion points from her discussion with Mr. Samineni about the work environment (which she refused to provide). Mr. Poston also asked her to have another discussion with Mr. Samineni to address the work environment going forward.

55.     On January 18, 2022, Mr. Poston sent a follow-up email to Ms. Tomseth, letting her know that he was still attempting to process what was communicated to him during their meeting. Mr. Poston requested a list of the complaints filed by Ms. Eckert, a summary of Ms. Tomseth's discussion with Mr. Samineni relating to the work environment (and Mr. Poston's response), and in particular, Mr. Poston's micromanagement of Mr. Poston, which had only worsened after Mr. Poston provided feedback about Mr. Samineni's micromanagement on a survey. Mr. Poston also asked Ms. Tomseth to address Ms. Eckert's hostile emails to him and the underlying causes. Mr. Poston explained that Ms. Eckert's emails to him were hostile and

12

intimidating, and that he was in the position of having to clean up work she made a mess out of due to her lack of understanding of the project.

56.    It was not until January 20, 2022 that Ms. Tomseth finally informed Mr. Poston of nature of the complaints against him by Ms. Eckert, each of which were obviously and demonstrably in direct response to, and retaliation for, his complaints about her.

57.    Mr. Poston met with Ms. Tomseth again on February 3, 2022. Lorraine Evans (Ms. Tomseth's supervisor) was also present. During the meeting, Mr. Poston felt that they were ganging up on him, to force to accept the narrative they were creating. Mr. Poston told them that what they were saying was not reflective of the situation. Mr. Poston was then informed that the company had concluded its "investigation" of his complaint, and determined that no discrimination had occurred.

58.    Mr. Poston was shocked by this outcome, since he had been complaining and reporting the discrimination and hostile work environment for the better part of two years, during which time Ms. Eckert and Mr. Samineni demonstrated a pattern and practice of having difficulties working with African-American/Black colleagues. Mr. Poston renewed his request for an appropriate investigation to be conducted.

59.    The only "solution" offered to address his complaints and concerns was to create a "Team Charter" addressing team behavior expectations and team responsibilities.

60.    Sometime after that, during a 1:1 meeting, in an attempt to convince Mr. Poston that he is not prejudiced, Mr. Samenini said, "I probably should not be telling you this, but I do not agree with Ms. Eckert's bad behavior and how ATPCO HR is handling your complaint. I should have stood up to Ms. Eckert and stopped her a long time ago." Mr. Samineni apologized to Mr. Poston for not putting a stop to Ms. Eckert's bad behavior. Mr. Samineni then began to try

to separate himself from Ms. Eckert by saying he would be working extremely hard to prove that he is not prejudiced. Mr. Poston responded to Mr. Samineni as he had responded in the previous meeting - that Mr. Samineni had a track record of not working well with African Americans. Mr. Samineni did not deny this claim.

61.     On March 16, 2022, Ms. Tomseth sent Mr. Poston a copy of the final "Team Charter."

62.     Mr. Poston responded, questioning why the company did not simply enforce the existing Code of Conduct, again objecting to the attempt to change the narrative.  Mr. Poston reiterated that he had been placed in a hostile environment from the beginning, and again asked that an investigation by the appropriate parties be conducted into his claims.

63.     On July 19, 2022, Mr. Poston filed a Charge of Discrimination with the EEOC, alleging discrimination and retaliation on the bases of his age and race.   ATPCO submitted its Position Statement to the EEOC on October 7, 2022, and Mr. Poston submitted a rebuttal to Position Statement on January 10, 2023.  During this EEOC process, HR told Mr. Poston that there "there would be no discrimination claims on [HR's] watch." This was yet another overt act of hostility and retaliation – one intended to intimidate and frighten Mr. Poston in the workplace and cause him additional distress since he continues to report to work in the hostile, discriminatory and retaliatory environment every day.

64.     Currently, Mr. Poston am still employed by ATPCO.  However, the constant and continuous discrimination hostility and acts of retaliation continue to cause distress and damage to Mr. Poston.

65.     Mr. Poston is aware that at some point during a 1:1 meeting between Mr. Martinez and Mr. Samineni, in response to Mr. Samineni asking Mr. Martinez how Mr. Poston

and Ms. Eckert were interacting, Mr. Conrad told Mr. Samineni that Ms. Eckert was creating a hostile work environment and appeared to him to be "unstable." Still, no action was taken, either to protect Mr. Poston, or to address Ms. Eckert's behavior.

66.     In or around May 2022 the company went through a restructuring. Mr. Poston's title was changed to Principal Engineer, Platform (a lateral title change with no change in duties), and in January 2023, he began reporting to Farshad Abbassi ("Mr. Abbassi").

67.     Notably, just before Mr. Poston (and Conrad Martinez, now Senior Principal Engineer) were moved to their new group, Mr. Samineni rushed to give Mr. Poston an impromptu quarterly review (since Mr. Samineni had failed to give the team quarterly reviews), rating Mr. Poston's performance as "average." Mr. Martinez was not subjected to an impromptu review.

68.     In addition to the above, Mr. Poston's reputation has been irreparably damaged, as Ms. Eckert and others continues to demean and belittle Mr. Poston in the presence of his colleagues and co-workers.

69.     During his employment, Mr. Poston has not had the opportunities for advancement afforded to his co-workers. For instance, the position Mr. Martinez was promoted into during Mr. Poston's first week of employment – Principal Database Administrator – was the level Mr. Poston had held at his previous employment prior to joining ATPCO, and the level he should have been hired in to. Then, when Mr. Martinez's title was changed to Senior Principal Engineer, Mr. Poston was still only given the Principal Engineer title, which did not reflect or match his experience and education. Being held back in the manner also reduced Mr. Poston's chances to demonstrate his capabilities.

70.     Defendant's conduct and treatment of Mr. Poston has diminished his self-esteem, and his confidence, both personally and professionally, and has caused Mr. Poston to suffer from depression, anxiety and mental anguish. Defendant's actions have had a negative effect on Mr. Poston's ability to focus and concentrate – an integral skill to any technical job.

71.     Mr. Poston's lowered self-esteem and confidence, and his feelings of depression and anxiety has caused strain in his relationship with his wife, as well as with friends and other family members.

72.     As a result of Defendant's conduct and treatment, Mr. Poston now suffers from insomnia. He first attempting to resolve the issue without the need for additional medication. He discussed the issue with his psychiatrist to find a solution using the medication he currently takes. However, while taking more of the medication helps with sleep a little, it makes him tired and cathartic the following day. Mr. Poston's physician has now prescribed Lunesta to assist with sleep, but so far it has not been effective; and will have to consult with a sleep doctor. The insomnia is made worse by Mr. Poston's Restless Leg Syndrome, which is exacerbated by stress and emotional distress, and further interrupts his sleep.

73.     When Mr. Poston started working at ATPCO, he was pre-diabetic, and had been pre-diabetic for decades. During his employment, as he was being subjected to the stress and anxiety of the hostile, discriminatory and retaliatory work environment, Mr. Poston progressed to having diabetes, which required two prescription medications to bring his ACL to reasonable levels. Mr. Poston has also been unable to reduce his hypertension medications while working at ATPCO, and his doctor determined that the medications Mr. Poston was on to treat his high cholesterol (another condition exacerbated by stress) were no longer sufficient to manage his condition, and had to be modified.

**COUNT ONE –**
**DISCRIMINATION/HOSTILE WORK ENIVIRONMENT**
**IN EMPLOYMENT IN VIOLATION OF THE ADEA**

74. The foregoing allegations are incorporated as if realleged herein.

75. APTCO, through its agents and officers, discriminated, and continues to discriminate, against Mr. Poston on account of his age during the course of his employment. This discrimination was, and is, with respect to Mr. Poston's compensation, terms, conditions, and privileges of employment, and constitutes violations of the Age Discrimination in Employment Act of 1967, as amended.

76. Mr. Poston informed APTCO that he did not wish to participate in birthday celebrations at work, that he considered the personal information relating to his age and date of birth to be private, and that he did not wish to share that information.

77. Despite this, Cheryl Eckert sent out a team wide email detailing Mr. Poston's age by referring to his "milestone" birthday. This was followed by several other team members reading the information and "replying all" to the team email acknowledging Mr. Poston's "milestone" birthday.

78. Mr. Poston forwarded the email to Ms. Bordeaux with "COMPLAINT" in the subject line, letting her know that he had previously indicated that he did not wish to participate in birthday celebrations at work. Ms. Bordeaux referred his complaint to Ms. Evans who explained that "typically" employees "have to come forward to say they don't want to be recognized or celebrated" – which is exactly what Mr. Poston had already done.

79. Ms. Eckert sent out a similar email to the team, announcing the "milestone" birthday of a co-worker, Jim Woodhams and then, during a Microsoft Teams meeting with Ms.

Eckert, Jim Woodhams, and Conrad Martinez, Ms. Eckert commented that "Jim is catching up"

to Mr. Poston in terms of age with his "milestone" birthday.

80.     Ms. Eckert's comment again implicitly referenced Mr. Poston's age, comparing

him to another, older co-worker, who Ms. Eckert considered to be in the same age related

category as Mr. Poston.

81.     Other acts of discrimination based on Mr. Poston's age include:

- Assigning Mr. Poston to a futile, impossible to complete project on the day he was hired (which had previously been being handled by a 65 year old employee), with full knowledge of the futility of the project, setting Mr. Poston up for failure from the start (when Mr. Poston requested that the project be assigned to someone else,  Mr. Samineni, knowing the project was futile, ended it instead, and did not subject any of the other team members, who were younger than Mr. Poston, to the impossible task, or set them up for failure);

- Ms. Eckert and Mr. Samineni teaming up to undermine Mr. Poston's progress on the "Reorganizing DB2 Table Datasets" project, including Ms. Eckert falsely reporting to Mr. Samineni that Mr. Poston was "doing it wrong," and Mr. Samineni believing Ms. Eckert over Mr. Poston until another co-worker and the vendor agreed with Mr. Poston;

- Mr. Samineni telling Mr. Poston to "lighten up" when he reported the challenges of working with Cheryl Eckert, and taking no further action;

- Mr. Samineni and others failing to properly investigate or take any action at all in response to Mr. Poston's numerous complaints about the hostile work environment;

- Ms. Eckert treating Mr. Poston in an unprofessional and uncooperative manner, including withholding information and speaking down to him in email communications;

- Allowing other employees in the department to emulate Ms. Eckert's unprofessional treatment of Mr. Poston, with no repercussions;

- Ms. Eckert intentionally withholding information on a project ("NEW Job Aid – RTST"), so that Mr. Poston would fail;

- Mr. Samineni reprimanding Mr. Poston in an email regarding how he was communicating with a team member, while not reprimanding others who communicated in a less than professional manner or were discourteous towards Mr. Poston;

- Ms. Eckert berating and belittling Mr. Poston via email for implementing database changes she did not agree with, copying Mr. Poston's supervisor, Mr. Samineni, and a co-worker, Anup Kumar, rather than addressing the issue with him privately, in contrast to Ms. Eckert's polite and professional communications with others on the team, who were younger than Mr. Poston;

- Ms. Eckert stating in an email (and copying Mr. Samineni) that she would "rather work with Anup" than Mr. Poston, who is younger than Mr. Poston;

- Mr. Poston not receiving work assignments from Data Architects, which were instead being directed to Ms. Eckert, and Mr. Samineni being uncooperative in scheduling a meeting with Mr. Poston to discuss this issue. Mr. Samineni and Ms. Eckert were both fully aware that Mr. Poston would be evaluated based on his contributions, and they were intentionally making it difficult for Mr. Poston to make any meaningful contributions when work was being diverted away from him.

82. When Mr. Poston went to his supervisor, Mr. Samineni, with his concerns and complaints about the discrimination and hostile work environment, he communicated to Mr. Samineni that if they could not find a resolution, that he planned to reach out to HR. Mr. Samineni asked Mr. Poston to give him some time to solicit advice on how to handle the situation before Mr. Poston went to HR, and then he circumvented Mr. Poston and went to HR behind his back in order to control the narrative.

83. APTCO took this adverse employment action against Mr. Poston because of his age.

84. Mr. Poston was treated differently, and discriminated against in terms of his employment, based on his age.

85. This conduct by ATPCO was actuated by malice, spite and ill-will; was willful and wanton, and evinced conscious disregard for the federally protected rights of Mr. Poston.

86.     APTCO engaged in these discriminatory practices willfully, within the meaning of Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b).

87.     As a direct and proximate result of this discrimination, Mr. Poston has suffered and continues to suffer injury including lost career opportunities, and other injury.

88.     Due to the severity and knowledge of APTCO's conduct, which was willful and intentional, Mr. Poston is also entitled to liquidated damages.

## COUNT TWO - DISCRIMINATION AND HOSTILE WORK ENVIRONMENT DURING THE COURSE OF EMPLOYMENT IN VIOLATION OF TITLE VII

89.     The allegations of the foregoing paragraphs are incorporated as if realleged herein.

90.     Defendant discriminated against Mr. Poston, treated Mr. Poston in a disparate manner, and subjected Mr. Poston to a hostile work environment because of his race (African-American/Black).

91.     Acts of discrimination include:

- Assigning Mr. Poston to a futile, impossible to complete project on the day he was hired with full knowledge of the futility of the project, setting Mr. Poston up for failure from the start (when Mr. Poston requested that the project be assigned to someone else,  Mr. Samineni, knowing the project was futile, ended it instead, and did not subject any of the other team members, none of whom were African-American/ Black, to the impossible task, or set them up for failure);

- Ms. Eckert and Mr. Samineni teaming up to undermine Mr. Poston's progress on the "Reorganizing DB2 Table Datasets" project, including Ms. Eckert falsely reporting to Mr. Samineni that Mr. Poston was "doing it wrong," and Mr. Samineni believing Ms. Eckert over Mr. Poston until another co-worker and the vendor agreed with Mr. Poston;

- Mr. Samineni telling Mr. Poston to "lighten up" when he reported the challenges of working with Cheryl Eckert, and taking no further action;

- Mr. Samineni and others failing to properly investigate or take any action at all in response to Mr. Poston's numerous complaints about the hostile work environment;

- Ms. Eckert treating Mr. Poston in an unprofessional and uncooperative manner, including withholding information and speaking down to him in email communications;

- Allowing other employees in the department to emulate Ms. Eckert's unprofessional treatment of Mr. Poston, with no repercussions;

- Ms. Eckert intentionally withholding information on a project ("NEW Job Aid – RTST"), so that Mr. Poston would fail;

- Mr. Samineni reprimanding Mr. Poston in an email regarding how he was communicating with a team member, while not reprimanding others who communicated in a less than professional manner or were discourteous towards Mr. Poston;

- Ms. Eckert berating and belittling Mr. Poston via email for implementing database changes she did not agree with, copying Mr. Poston's supervisor, Mr. Samineni, and a co-worker, Anup Kumar, rather than addressing the issue with him privately, in contrast to Ms. Eckert's polite and professional communications with others on the team, who were not African-American/Black;

- Ms. Eckert stating in an email (and copying Mr. Samineni) that she would "rather work with Anup" (who is not African-American/Black) than Mr. Poston;

- Mr. Poston not receiving work assignments from Data Architects, which were instead being directed to Ms. Eckert, and Mr. Samineni being uncooperative in scheduling a meeting with Mr. Poston to discuss this issue. Mr. Samineni and Ms. Eckert were both fully aware that Mr. Poston would be evaluated based on his contributions, and they were intentionally making it difficult for Mr. Poston to make any meaningful contributions when work was being diverted away from him.

92. APTCO has demonstrated a pattern and practice of treating its African-American/Black employees in a disparate manner.

93. Mr. Poston is aware that two African-American System Administrators also experienced similar treatment and a similar work environment when working with Ms. Eckert and Mr. Samineni, finding them both unnecessarily and inexplicably difficult to work with. Mr.

Poston is also aware that an African-American employee who was a DBA at ATPCO prior to his employment took an early retirement as a result of the difficult team environment.

94.    When Mr. Poston went to his supervisor, Mr. Samineni, with his concerns and complaints about the discrimination and hostile work environment, he communicated to Mr. Samineni that if they could not find a resolution, that he planned to reach out to HR.  Mr. Samineni asked Mr. Poston to give him some time to solicit advice on how to handle the situation before Mr. Poston went to HR, and then he circumvented Mr. Poston and went to HR behind his back in order to control the narrative.

95.    Non-African-American/Black employees were not subjected to similar treatment.

96.    Defendant's discriminatory treatment of Mr. Poston violated Title VII of the Federal Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).

97.    In discriminating against Mr. Poston in violation of federal law, Defendant evidenced malice, spite, and ill will; its actions were willful and wanton; and evinced a conscious disregard for the rights of Mr. Poston .

98.    As a direct and proximate result of Defendant's actions, Mr. Poston has suffered and continues to suffer emotional distress and physical injury.  Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, decreased self-esteem, loss of confidence, depression, anxiety, stress, fearfulness, stress and anxiety, loss of enjoyment of life, withdrawal from social interaction, lost career opportunities, and other non pecuniary losses.

99.    Due to the conscious disregard for Mr. Poston's federally protected rights, and the severity of Defendant's conduct, Mr. Poston is also entitled to punitive damages.

## COUNT THREE –
## RETALIATION IN VIOLATION OF THE ADEA

100.    The foregoing allegations are incorporated as if realleged herein.

101.    APTCO, through its agents and officers, retaliated, and continues to retaliate against Mr. Poston for reporting and objecting to discrimination based on his age during the course of his employment.  This retaliation was, and is, with respect to Mr. Poston's compensation, terms, conditions, and privileges of employment, and constitutes violations of the Age Discrimination in Employment Act of 1967, as amended.

102.    Mr. Poston filed an official HR complaint of discrimination and hostile work environment on December 1, 2021. During the meeting, which Mr. Poston was prohibited from recording, Mr. Poston learned for the first time that Ms. Eckert – the subject of many of Mr. Poston's complaints – had retaliated by filing  multiple, unfounded complaints against him.  Mr. Poston was not provided with any details of the complaints filed against him until almost seven weeks later, despite several requests made by Mr. Poston during that time.  Ms. Tomseth also refused to provide Mr. Poston with any details of what she had done to address his complaints, or what steps would be taken to correct remedy the situation.

103.    On February 3, 2022, during a meeting with Ms. Tomseth and Ms. Evans, Mr. Poston was informed that the company had concluded its "investigation" of his complaint, and determined that no discrimination had occurred.  Mr. Poston renewed his request for an appropriate investigation to be conducted.

104.    Sometime after that, during a 1:1 meeting, in an attempt to convince Mr. Poston that he is not prejudiced, Mr. Samenini said, "I probably should not be telling you this, but I do not agree with Ms. Eckert's bad behavior and how ATPCO HR is handling your complaint.  I

should have stood up to Ms. Eckert and stopped her a long time ago." Mr. Samineni apologized to Mr. Poston for not putting a stop to Ms. Eckert's bad behavior.

105.    On July 19, 2022, Mr. Poston filed a Charge of Discrimination with the EEOC, alleging discrimination and retaliation on the bases of his age. ATPCO submitted its Position Statement to the EEOC on October 7, 2022, and Mr. Poston submitted a rebuttal to APTOC's Position Statement on January 10, 2023. During this EEOC process, HR told Mr. Poston that there "there would be no discrimination claims on [HR's] watch." This was yet another overt act of hostility and retaliation – one intended to intimidate and frighten Mr. Poston in the workplace and cause him additional distress since he continues to report to work in the hostile, discriminatory and retaliatory environment every day.

106.    APTCO retaliated against Mr. Poston because he complained about the discrimination and hostile work environment to which he was subjected, and demanded that APTCO take steps to investigate his complaints and protect him. When that did not occur, Mr. Poston filed a Charge of Discrimination based on age with the EEOC, and was then threatened that "there would be no discrimination claims on [HR's] watch." This was particularly menacing since Mr. Poston is still employed by APTCO, and is still dependent upon ATPCO for his livelihood.

107.    This conduct by ATPCO was actuated by malice, spite and ill-will; was willful and wanton, and evinced conscious disregard for the federally protected rights of Mr. Poston.

108.    APTCO engaged in this retaliatory conduct willfully, within the meaning of Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b).

109.    As a direct and proximate result of this retaliation, Mr. Poston has suffered and continues to suffer injury lost career opportunities, and other injury.

110.    Due to the severity and knowledge of APTCO's conduct, which was willful and intentional, Mr. Poston is also entitled to liquidated damages.

## COUNT FOUR -
## RETALIATION IN VIOLATION OF TITLE VII

111.    The allegations of the foregoing paragraphs are incorporated as if realleged herein.

112.    Defendant retaliated against Mr. Poston because Mr. Poston complained about and reported that he was being discriminated against because of his race (African-American/ Black).

113.    Mr. Poston filed an official HR complaint of discrimination and hostile work environment on December 1, 2021. During the meeting, which Mr. Poston was prohibited from recording, Mr. Poston learned for the first time that Ms. Eckert – the subject of many of Mr. Poston's complaints – had retaliated by filing  multiple, unfounded complaints against him.  Mr. Poston was not provided with any details of the complaints filed against him until almost seven weeks later, despite several requests made by Mr. Poston during that time.  Ms. Tomseth also refused to provide Mr. Poston with any details of what she had done to address his complaints, or what steps would be taken to correct remedy the situation.

114.    On February 3, 2022, during a meeting with Ms. Tomseth and Ms. Evans, Mr. Poston was informed that the company had concluded its "investigation" of his complaint, and determined that no discrimination had occurred.  Mr. Poston renewed his request for an appropriate investigation to be conducted.

115.    Sometime after that, during a 1:1 meeting, in an attempt to convince Mr. Poston that he is not prejudiced, Mr. Samenini said, "I probably should not be telling you this, but I do not agree with Ms. Eckert's bad behavior and how ATPCO HR is handling your complaint.  I should have stood up to Ms. Eckert and stopped her a long time ago."  Mr. Samineni apologized to Mr. Poston for not putting a stop to Ms. Eckert's bad behavior.

116.    On July 19, 2022, Mr. Poston filed a Charge of Discrimination with the EEOC, alleging discrimination and retaliation on the bases of race.   ATPCO submitted its Position Statement to the EEOC on October 7, 2022, and Mr. Poston submitted a rebuttal to APTCO's Position Statement on January 10, 2023.  During this EEOC process, HR told Mr. Poston that there "there would be no discrimination claims on [HR's] watch." This was yet another overt act of hostility and retaliation – one intended to intimidate and frighten Mr. Poston in the workplace and cause him additional distress since he continues to report to work in the hostile, discriminatory and retaliatory environment every day.

117.    APTCO took retaliated against Mr. Poston because he complained about the discrimination and hostile work environment to which he was subjected, and demanded that APTCO take steps to investigate his complaints and protect him.  When that did not occur, Mr. Poston filed a Charge of Discrimination based on age with the EEOC, and was then threatened that "there would be no discrimination claims on [HR's] watch."  This was particularly menacing since Mr. Poston is still employed by APTCO, and is still dependent upon ATPCO for his livelihood.

118.    This conduct by ATPCO was actuated by malice, spite and ill-will; was willful and wanton, and evinced conscious disregard for the federally protected rights of Mr. Poston.

119.    Defendant's retaliatory treatment of Mr. Poston violated Title VII of the Federal Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)(1).

120.    In retaliating against Mr. Poston in violation of federal law, Defendant evidenced malice, spite, and ill will; its actions were willful and wanton; and evinced a conscious disregard for the rights of Mr. Poston .

121.    As a direct and proximate result of Defendant's actions, Mr. Poston has suffered and continues to suffer emotional distress and physical injury.  Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, decreased self-esteem, loss of confidence, depression, anxiety, stress, fearfulness, stress and anxiety, loss of enjoyment of life, withdrawal from social interaction, lost career opportunities, and other non pecuniary losses.

122.    Due to the conscious disregard for Mr. Poston's federally protected rights, and the severity of Defendant's conduct, Mr. Poston is also entitled to punitive damages.

**COUNT FIVE –**
**DISCRIMINATION AND HOSTILE WORK ENVIRONMENT**
**IN THE COURSE OF EMPLOYMENT IN VIOLATION OF THE**
**VIRGINA HUMAN RIGHTS ACT/VIRGINIA VALUES ACT**

123.    The allegations of the foregoing paragraphs are incorporated as if realleged herein.

124.    Defendant discriminated against Mr. Poston, treated Mr. Poston in a disparate manner, and subjected Mr. Poston to hostile work environment because of his race (African-American/Black), in violation of Virginia Human Rights Act, as amended in July 2020 by the Virginia Values Act (Senate Bill 868), codified at Va. Code § 2.2-3900, *et seq.*

125.   Acts of discrimination include:

- Assigning Mr. Poston to a futile, impossible to complete project on the day he was hired with full knowledge of the futility of the project, setting Mr. Poston up for failure from the start (when Mr. Poston requested that the project be assigned to someone else,  Mr. Samineni, knowing the project was futile, ended it instead, and did not subject any of the other team members, none of whom were African-American/ Black, to the impossible task, or set them up for failure);

- Ms. Eckert and Mr. Samineni teaming up to undermine Mr. Poston's progress on the "Reorganizing DB2 Table Datasets" project, including Ms. Eckert falsely reporting to Mr. Samineni that Mr. Poston was "doing it wrong," and Mr. Samineni believing Ms. Eckert over Mr. Poston until another co-worker and the vendor agreed with Mr. Poston;

- Mr. Samineni telling Mr. Poston to "lighten up" when he reported the challenges of working with Cheryl Eckert, and taking no further action;

- Mr. Samineni and others failing to properly investigate or take any action at all in response to Mr. Poston's numerous complaints about the hostile work environment;

- Ms. Eckert treating Mr. Poston in an unprofessional and uncooperative manner, including withholding information and speaking down to him in email communications;

- Allowing other employees in the department to emulate Ms. Eckert's unprofessional treatment of Mr. Poston, with no repercussions;

- Ms. Eckert intentionally withholding information on a project ("NEW Job Aid  – RTST"), so that Mr. Poston would fail;

- Mr. Samineni reprimanding Mr. Poston in an email regarding how he was communicating with a team member, while not reprimanding others who communicated in a less than professional manner or were discourteous towards Mr. Poston;

- Ms. Eckert berating and belittling Mr. Poston via email for implementing database changes she did not agree with, copying Mr. Poston's supervisor, Mr. Samineni, and a co-worker, Anup Kumar, rather than addressing the issue with him privately, in contrast to Ms. Eckert's polite and professional communications with others on the team, who were not African-American/Black;

- Ms. Eckert stating in an email (and copying Mr. Samineni) that she would "rather work with Anup" (who is not African-American/Black) than Mr. Poston;

28

- Mr. Poston not receiving work assignments from Data Architects, which were instead being directed to Ms. Eckert, and Mr. Samineni being uncooperative in scheduling a meeting with Mr. Poston to discuss this issue. Mr. Samineni and Ms. Eckert were both fully aware that Mr. Poston would be evaluated based on his contributions, and they were intentionally making it difficult for Mr. Poston to make any meaningful contributions when work was being diverted away from him.

126.   APTCO has demonstrated a pattern and practice of treating its African-American/Black employees in a disparate manner.

127.   Mr. Poston is aware that two African-American System Administrators also experienced similar treatment and a similar work environment when working with Ms. Eckert and Mr. Samineni, finding them both unnecessarily and inexplicably difficult to work with. Mr. Poston is also aware that an African-American employee who was a DBA at ATPCO prior to his employment took an early retirement as a result of the difficult team environment.

128.   When Mr. Poston went to his supervisor, Mr. Samineni, with his concerns and complaints about the discrimination and hostile work environment, he communicated to Mr. Samineni that if they could not find a resolution, that he planned to reach out to HR. Mr. Samineni asked Mr. Poston to give him some time to solicit advice on how to handle the situation before Mr. Poston went to HR, and then he circumvented Mr. Poston and went to HR behind his back in order to control the narrative.

129.   Defendant was motivated to treat Mr. Poston in a disparate manner and to discriminate against him based on race, and such discriminatory treatment of Mr. Poston was in violation of the Virginia Human Rights Act, as amended in July 2020 by the Virginia Values Act (Senate Bill 868), codified at Va. Code § 2.2-3900, *et seq*.

130.   Employees who were not African-American/Black were not subjected to similar treatment.

131.    In discriminating against Mr. Poston in violation of the law, Defendant evidenced malice, spite, and ill will; its actions were willful and wanton; and evinced a conscious disregard for the rights of Mr. Poston .

132.    As a direct and proximate result of Defendant's actions, Mr. Poston has suffered and continues to suffer emotional distress and physical injury.  Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, decreased self-esteem, loss of confidence, depression, anxiety, stress, fearfulness, stress and anxiety, loss of enjoyment of life, withdrawal from social interaction, lost career opportunities, and other non pecuniary losses.

133.    Due to the conscious disregard for Mr. Poston's statutorily protected rights, and the severity of Defendant's conduct, Mr. Poston is also entitled to punitive damages.

**COUNT SIX –**
**RETALIATION AND TERMINATION IN VIOLATION OF**
**THE VIRGINA HUMAN RIGHTS ACT/VIRGINIA VALUES ACT**

134.    The allegations of the foregoing paragraphs are incorporated as if realleged herein.

135.    Defendant retaliated against Mr. Poston because Mr. Poston complained about and reported that he was being discriminated against because of his race (African-American/ Black).

136.    Mr. Poston filed an official HR complaint of discrimination and hostile work environment on December 1, 2021. During the meeting, which Mr. Poston was prohibited from recording, Mr. Poston learned for the first time that Ms. Eckert – the subject of many of Mr. Poston's complaints – had retaliated by filing  multiple, unfounded complaints against him.  Mr. Poston was not provided with any details of the complaints filed against him until almost seven

weeks later, despite several requests made by Mr. Poston during that time.  Ms. Tomseth also refused to provide Mr. Poston with any details of what she had done to address his complaints, or what steps would be taken to correct remedy the situation.

137.    On February 3, 2022, during a meeting with Ms. Tomseth and Ms. Evans, Mr. Poston was informed that the company had concluded its "investigation" of his complaint, and determined that no discrimination had occurred.  Mr. Poston renewed his request for an appropriate investigation to be conducted.

138.    Sometime after that, during a 1:1 meeting, in an attempt to convince Mr. Poston that he is not prejudiced, Mr. Samenini said, "I probably should not be telling you this, but I do not agree with Ms. Eckert's bad behavior and how ATPCO HR is handling your complaint.  I should have stood up to Ms. Eckert and stopped her a long time ago."  Mr. Samineni apologized to Mr. Poston for not putting a stop to Ms. Eckert's bad behavior.

139.    On July 19, 2022, Mr. Poston filed a Charge of Discrimination with the EEOC, and a Complaint of Discrimination with the OAG, alleging discrimination and retaliation on the bases of race.  ATPCO submitted its Position Statement to the EEOC on October 7, 2022, and Mr. Poston submitted a rebuttal to APTCO's   Position Statement on January 10, 2023.  During this EEOC process, HR told Mr. Poston that there "there would be no discrimination claims on [HR's] watch." This was yet another overt act of hostility and retaliation – one intended to intimidate and frighten Mr. Poston in the workplace and cause him additional distress since he continues to report to work in the hostile, discriminatory and retaliatory environment every day.

140.    APTCO was motivated to retaliate against Mr. Poston because he complained about the discrimination and hostile work environment to which he was subjected, and demanded that APTCO take steps to investigate his complaints and protect him.  When that did not occur,

Mr. Poston filed a Charge of Discrimination based on age with the EEOC, and was then threatened that "there would be no discrimination claims on [HR's] watch." This was particularly menacing since Mr. Poston is still employed by APTCO, and is still dependent upon ATPCO for his livelihood.

141.    Such retaliation was in violation of the Virginia Human Rights Act, as amended in July 2020 by the Virginia Values Act (Senate Bill 868), codified at Va. Code § 2.2-3900, *et seq.*

142.    This conduct by ATPCO was actuated by malice, spite and ill-will; was willful and wanton, and evinced conscious disregard for the federally protected rights of Mr. Poston.

143.    In retaliating against Mr. Poston in violation of the law, Defendant evidenced malice, spite, and ill will; its actions were willful and wanton; and evinced a conscious disregard for the rights of Mr. Poston .

144.    As a direct and proximate result of Defendant's actions, Mr. Poston has suffered and continues to suffer emotional distress and physical injury. Such injury includes pain, suffering, inconvenience, mental anguish, embarrassment, humiliation, decreased self-esteem, loss of confidence, depression, anxiety, stress, fearfulness, stress and anxiety, loss of enjoyment of life, withdrawal from social interaction, lost career opportunities, and other non pecuniary losses.

145.    Due to the conscious disregard for Mr. Poston's statutorily protected rights, and the severity of Defendant's conduct, Mr. Poston is also entitled to punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff William L. Poston requests that this Court enter judgment in his favor and against Defendant Airline Tariff Publishing Company on the above Counts, and further:

(a)    Award Mr. Poston compensatory damages to be determined by a jury, plus demonstrated past and future pecuniary damages on the above-stated Counts One through Six; and in addition

(b)    Award Mr. Poston liquidated damages on Counts One and Three; and in addition

(c)    Award Mr. Poston punitive damages on Counts Two, Four, Five, and Six in the amount of $350,000 (the statutory cap in Virginia); and in addition

(d)    Award Mr. Poston's attorneys' fees and the costs of this action; and in addition

(e)    Award injunctive relief consisting of an order prohibiting Defendant from engaging in further employment practices that create or tolerate a discriminatory and retaliatory work environment; and in addition

(f)    Award Mr. Poston such other and further relief as may be appropriate under the circumstances.

## **JURY DEMAND**

### **PLAINTIFF WILLIAM L. POSTON DEMANDS A TRIAL BY JURY.**

March 29, 2023                    Respectfully submitted,

                                  */S/ CARLA D. BROWN*
                                  Carla D. Brown, VSB No. 44803
                                  CHARLSON BREDEHOFT COHEN
                                    BROWN & NADELHAFT, P.C.
                                  11260 Roger Bacon Drive, Suite 201
                                  Reston, Virginia 20190
                                  cbrown@cbcblaw.com
                                  (703) 318-6800  Telephone
                                  (703) 318-6808  Facsimile
                                  *Counsel for Plaintiff, William L. Poston*

34