IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| WILLIAM L. POSTON, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:23-cv-415 |
| ) | |
| AIRLINE TARIFF PUBLISHING CO., ) | |
|     Defendant. ) | |

**ORDER**

At issue in this employment retaliation dispute is Defendant Airline Tariff Publishing Co. ("ATPCO")'s motion to dismiss Plaintiff William L. Poston's amended complaint ("AC") for failure to state a claim. Distilled to its essence, Plaintiff's AC alleges that a coworker's demeaning treatment of Plaintiff amounts to actionable retaliation. That claim must fail. This is so for two reasons: (i) Plaintiff does not allege facts sufficient to show that ATPCO took a material adverse action against him, and (ii) Plaintiff does not allege facts sufficient to show that, even assuming a material adverse act occurred, that there is a causal nexus between any such acts and Plaintiff's protected conduct. For those reasons, as explained more fully below, ATPCO's motion must be granted.

**I.**

The facts alleged relevant to resolving ATPCO's motion can be summarized as follows:

- Plaintiff William L. Poston is a 61-year-old African American man who began working as a Senior DB2 Database Administrator in the IT/Data Operations Division of ATPCO in January 2020. AC ¶¶ 2, 19 (Dkt. 21).

- Plaintiff's supervisor is Rajesh Samineni, who is younger than Plaintiff and not African American. AC ¶ 19.

- Plaintiff was hired to complete an allegedly impossible project (the "Production Standardization Project") to review all database changes implemented to ATPCO's production environment. The employee previously assigned to this project indicated to

1

- Samineni that the project was impossible prior to Plaintiff's assignment to the task. This assignment "set up [Plaintiff] for failure from the start." AC ¶¶ 22, 24.

- Plaintiff also asserts that this project was a routine task that he had learned early in his career. AC ¶ 23.

- Cheryl Eckert, a colleague of Plaintiff who is not African American,[1] reported to Samineni that she thought Plaintiff was completing the Production Standardization Project incorrectly. Samineni agreed with Eckert, and Plaintiff had to explain to Samineni why Plaintiff was correct. Plaintiff also informed Samineni that he had difficulties working with Eckert and was instructed to "lighten up." AC ¶¶ 23, 25.

- Plaintiff submitted a memorandum to management asking to be removed from the Production Standardization Project due to its impossibility. Instead of reassigning the project to another employee, ATPCO project was terminated. AC ¶¶ 22, 26.

- Plaintiff repeatedly complained to Samineni about a hostile work environment and that Eckert treated Plaintiff in a disparate manner. Plaintiff told Samineni that other employees also noticed this disparate treatment. Plaintiff warned Samineni that if nothing was done to remedy the situation, Plaintiff would report Eckert's behavior to human resources ("HR"). AC ¶ 27.

- Plaintiff joined a diversity focus group at ATPCO and shared his challenges working for ATPCO, namely, Plaintiff's belief that he was experiencing a hostile work environment due to his age and race. Plaintiff alleges that others in the group expressed sentiments similar to Plaintiff's, and that the director of the focus group apologized to Plaintiff. AC ¶¶ 28–29.

- Two other African American employees also had difficult experiences working with Eckert and Samineni. According to Plaintiff, a third African American employee took early retirement because of the difficult environment. AC ¶ 39.

- In June 2021, Eckert acted unprofessionally towards Plaintiff regarding a project in Eckert's domain, and Eckert spoke to Plaintiff as if he were her subordinate. Plaintiff again reached out to Samineni to inform Samineni of Ecker's conduct. AC ¶ 31.

- In September 2021, Eckert sent a team-wide email congratulating Plaintiff on a "milestone" birthday. Plaintiff complained to the Diversity Chief, stating that he had previously indicated that he did not want to participate in birthday celebrations at work. Plaintiff's complaint was referred to the Director of People & Culture, who instructed Plaintiff that the solution was to opt out of sharing personal milestones or events. AC ¶¶ 32–34.

---

[1] There are no allegations in the AC regarding Eckert's age.

- In October 2021, Eckert sent a second email to the team announcing a "milestone" birthday of a coworker and stating that the coworker was "catching up" to Plaintiff. AC ¶ 35.

- In November 2021, Eckert sent an email to Plaintiff berating and belittling him for making changes to a database that she did not agree with and stating that, if Plaintiff "was not understanding," he should "cease and desist." Eckert copied Samineni on the email and stated that she would rather work with Anup Kumar, a younger colleague. Samineni directed Eckert to stop sending emails, but she continued to do so. AC ¶¶ 36–37.

- Eckert was polite and professional when communicating with others on the team, who Plaintiff notes were younger than Plaintiff and not African American. AC ¶ 38.

- Plaintiff again complained to Samineni and said that Plaintiff was thinking of going to HR regarding the discrimination and hostile work environment that Plaintiff felt he was experiencing. During a November 2021 meeting, Samineni asked Plaintiff to give Samineni some time to think about a resolution and to solicit advice from a colleague. Samineni then talked to HR. AC ¶ 40.

- In December 2021, Plaintiff contacted HR to file a formal complaint of discrimination and hostile work environment. Plaintiff communicated that work was being directed to Eckert but not to him and that Samineni was uncooperative in finding a solution. AC ¶¶ 41–43.

- Plaintiff also learned at this time that Eckert had filed multiple complaints against him. Plaintiff was not provided with copies of these complaints despite his requests to view those documents. AC ¶¶ 44–45.

- In January 2022, Plaintiff had a follow-up meeting with HR at which Plaintiff was informed that HR had spoken to Samineni to address Plaintiff's claims. Plaintiff was again denied access to Eckert's complaints, but Plaintiff was informed of the nature of Eckert's allegations against him two days later. AC ¶¶ 46–50.

- At a meeting with HR in February 2022, Plaintiff was informed that HR had concluded its investigation of Plaintiff's complaints and HR determined that no discrimination had occurred. To avoid future problems, HR suggested a "Team Charter" that would address behavior expectations and team responsibilities. AC ¶¶ 52, 54.

- Sometime later, Samineni apologized to Plaintiff for how ATPCO handled Plaintiff's complaints and for not putting a stop to Eckert's behavior. Plaintiff told Samineni that Samineni also had a track record of not working well with African Americans, a claim that Samineni did not deny. AC ¶ 55.

- In July 2022, Plaintiff filed an EEOC charge of discrimination based on age and race. During the EEOC process, HR told Plaintiff that "there would be no discrimination claims on HR's watch." AC ¶ 59.

- Plaintiff remains employed at ATPCO. AC ¶ 60.

- Eckert continues to demean and belittle Plaintiff in the presence of his coworkers. These experiences have caused and continue to have a negative effect on Plaintiff's health. AC ¶¶ 62–67.

Plaintiff filed the instant action on May 29, 2023, alleging age and race discrimination, a hostile work environment, and retaliation in violation of the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), and the Virginia Human Rights Act ("VHRA"). On July 28, 2023, Plaintiff's complaint was dismissed without prejudice and with leave to amend. *See* Order on Mot. to Dismiss at 17 (the "MTD Order"), *Poston v. Airline Tariff Publ'g Co.* (July 28, 2023) (Dkt. 19). In the AC, Plaintiff abandons his allegations of discrimination and hostile work environment, but realleges three claims of retaliation in violation of the ADEA, Title VII, and the VHRA. On September 14, 2023, ATPCO moved to dismiss the AC for failure to state a claim. (Dkt. 22). That motion has now been fully briefed and argued and is thus ripe for disposition.

## II.

A motion to dismiss under Rule 12(b)(6), Fed. R. Civ. P., "tests the legal sufficiency of the complaint." *In re Birmingham*, 846 F.3d 88, 92 (4th Cir. 2017), *as amended* (Jan. 20, 2017). A claim should be dismissed under Rule 12 unless the complaint contains "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). When ruling on a 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But those allegations must show "more than a sheer possibility that the defendant acted unlawfully" and contain more than "'naked assertions' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 557 U.S. at 557) (internal alterations omitted). Importantly, a district court is not bound to "accept

4

as true a legal conclusion couched as a factual allegation." *Anand v. Ocwen Loan Servicing, LLC*, 754 F.3d 195, 198 (4th Cir. 2014).

### III.

Plaintiff fails to state a claim for retaliation under the ADEA, Title VII, or the VHRA because the facts that he alleges do not establish a plausible claim for retaliation. Plaintiffs alleging retaliation can prove their claims through indirect or direct evidence "of conduct or statements that both reflect directly on the alleged discriminatory attitude and that bear directly on the contested employment decision." *Johnson v. Mechs. & Farmers Bank*, 309 F. App'x 675, 681 (4th Cir. 2009) (quoting *Taylor v. Va. Union Univ.*, 193 F.3d 219, 232 (4th Cir. 1999) (*en banc*)); *Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 303 (4th Cir. 1998). But discerning the actual reason for an employer's conduct can prove difficult. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 255 n.8 (1981) (describing this inquiry as an "elusive factual question."). To resolve this difficulty, the Supreme Court crafted the *McDonnell-Douglas* burden shifting framework, under which (i) the plaintiff must first establish a prima facie case, then (ii) the defendant must offer a legitimate, nondiscriminatory reason for the conduct, and then (iii) the plaintiff must show that the offered explanation is pretextual. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–03 (1973).[2]

To establish a prima facie case, a plaintiff must allege facts that plausibly establish: (1) that he engaged in protected activity; (2) that his employer took a materially adverse action against

---

[2] Importantly, *McDonnell Douglas* is simply a "procedural device, designed only to establish an order of proof and production." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 521 (1993). A plaintiff "need not plead a prima facie case . . . to withstand a motion to dismiss." *Holloway v. Maryland*, 32 F.4th 293, 298 (4th Cir. 2022). But a complaint must nevertheless plead facts sufficient to plausibly "satisfy the elements of a cause of action created by [] statute," and a "failure in the prima facie case often also reflects a failure of the overall evidence." *McCleary-Evans v. Md. Dep't of Trans.*, 780 F.3d 582, 585 (4th Cir. 2015); *Tynes v. Fla. Dep't of Juv. Just.*, 2023 WL 8593114, at *5 (11th Cir. Dec. 12, 2023).

5

him; and (3) that there was a causal link between the two events. *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 271 (4th Cir. 2015) (quoting *EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405–06 (4th Cir. 2005)). Protected activity includes opposing a discriminatory practice or participating in an investigation or proceeding. *See Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998).[3] An action is materially adverse if it "might have "dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). The requirement of material adversity is meant to distinguish "significant" harms from "trivial harms," such as "petty slights, minor annoyances, and simple lack of good manners." *Id.* In order "to avoid 'the uncertainties and unfair discrepancies that can plague a judicial effort to determine a plaintiff's unusual subjective feelings,'" whether conduct is materially adverse is determined on an objective basis. *Laurent-Workman v. Wormuth*, 54 F.4th 201, 214 (4th Cir. 2022) (quoting *Burlington N.*, 548 U.S. at 68–69). Finally, causation may be shown "through two routes." *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 123 (4th Cir. 2021) (quoting *Johnson v. United Parcel Serv., Inc.*, 839 F. App'x 781, 783–84 (4th Cir. 2021)). A plaintiff can allege either (i) "the existence of facts that suggest that the adverse action occurred because of the protected activity" or (ii) that "the adverse act bears sufficient temporal proximity to the protected activity." *Id.* (internal quotation marks and citations omitted).[4]

---

[3] Specifically, Title VII makes it unlawful (i) "for an employer to discriminate against any of his employees or applicants . . . because [the employee or applicant] has opposed any practice made [] unlawful" by Title VII or (ii) for an employer to discriminate against an employee or applicant "because he has made a charge, testified, assisted, or participated in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C. § 2000e-3.

[4] Plaintiff argues that the VHRA's standard for retaliation differs from the standard applicable under Title VII and the ADEA, yet he offers no persuasive authority for this proposition. His lone citation is a Supreme Court of Virginia opinion that dealt with the VHRA's preclusive effects on common law actions without discussing any alternative standard for retaliation under the VHRA compared to Title VII and the ADEA. *See* Resp. Br. at 8 (Dkt. 25) (citing *Mitchem v. Counts*, 259

These principles, applied to the facts alleged in Plaintiff's amended complaint, point persuasively to the conclusion that Plaintiff fails to allege facts to show plausibly a material adverse action or a casual nexus between any adverse action and Plaintiff's protected conduct. Plaintiff claims that the following actions were materially adverse: (i) Eckert's emails to Plaintiff in which she allegedly belittled and berated him; (ii) Samineni's decision to go to HR after informing Plaintiff that Samineni was working on a solution to Plaintiff's complaints, which enabled Eckert to file a complaint about Plaintiff before he could file a complaint against her; (iii) ATPCO's failure to investigate Plaintiff's complaints; (iv) a statement by HR that "there would be no discrimination claims on [HR's] watch;" and (v) continuous hostile and demeaning conduct by Eckert, often in the presence of Plaintiff's coworkers. Resp. Br. at 11. These allegations mirror those already rejected in Plaintiff's original complaint. The MTD Order explained that HR's statements were not material or adverse; that Ecker's complaints against Plaintiff were protected activity; that ATPCO was not liable for the actions of Ecker because she lacked any disciplinary or decision-making authority; and that a failure to investigate is insufficient to state a claim of

---

Va. 179 (2000)). That decision plainly does not support Plaintiff's position. Moreover, Plaintiff offers *no* alternative analytical framework to govern his claims under the VHRA, noting only that he "does not concede that the same federal standards apply to the retaliation provisions of the VHRA." Resp. Br. at 8.

In any event, the Order dismissing Plaintiff's original complaint already addressed this issue, noting that the "only district courts within this Circuit to address this question have held that the same *McDonnell-Douglas* framework applies to [] VHRA claims." MTD Order at 4–5. That Order also explained that Plaintiff's VHRA claim rests "on the same facts as his ADEA and Title VII claims" and Plaintiff "proposes no alternative framework by which to analyze his" VHRA claim. *Id.* The Order then held that because there is no reason to conclude that the standard for retaliation under the VHRA differs from the standard used under Title VII and the ADEA, the VHRA retaliation claim "will be analyzed under the same *McDonnell-Douglas* framework." *Id*. That Order is law of the case. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 819 (1988).

retaliation. *See* MTD Order at 14–16. Plaintiff offers no legally relevant facts in his AC to alter those conclusions.

Moreover, even if any of these allegations rose to the level of material adversity, Plaintiff has not pled facts sufficient to show "a causal link between [his] protected activity and [an] adverse action." *Laber v. Harvey*, 438 F.3d 404, 432 (4th Cir. 2006). Most of the complained-of conduct occurred well before any protected activity, namely, Plaintiff's report of workplace discrimination to HR and to the EEOC. And of the conduct that occurred post-reporting, the allegations in the AC provide no basis on which to conclude that either HR's statements about there being no discrimination or Eckert's statements about Plaintiff were related to Plaintiff's protected activities. Eckert's behavior towards Plaintiff did not change in the time before and after Plaintiff reported workplace discrimination. Indeed, it is not clear that Eckert was even aware that Plaintiff had reported workplace discrimination. *Cf. Roberts*, 998 F.3d at 124 (the Fourth Circuit has "consistently required proof of a decisionmaker's knowledge of protected activity to support a Title VII retaliation claim."). HR's statement occurred at some undefined point between the filing of Plaintiff's EEOC charge on July 19, 2022, and the January 10, 2023 filing of Plaintiff's rebuttal to ATPCO's Position Statement to the EEOC. Am. Compl. ¶ 59. For temporal proximity to support an inference of causation, the alleged retaliation must occur "very close" to the protected activity. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001). While there is no bright-line rule, courts in this Circuit have held that a three-month gap between protected activity and alleged retaliatory conduct is "insufficient to infer a causal relationship without other evidence of a causal link." *Roberts*, 998 F.3d at 127. A "lapse of two months" has similarly been held to "weaken significantly the inference of causation." *Horne v. Reznick Fedder & Silverman*, 154 F. App'x 361, 364 (4th Cir. 2005) (quoting *King v. Rumsfeld*, 328 F.3d 145, 151 n. 5 (4th Cir. 2003)). Here, HR's

statements occurred at some undefined time within a six-month window after Plaintiff filed his EEOC claim. That allegation cannot support a finding of adequate temporal proximity, and there is no other connection between Plaintiff's protected activities and HR's statement that would support an inference of causation.

Seeking to avoid dismissal, Plaintiff floats for the first time in his opposition brief several new theories that he believes salvage his retaliation claims.[5] They do not. Plaintiff first asserts that ATPCO is vicariously liable for Ecker's harassment, citing *Vance v. Ball State Univ.*, 570 U.S. 421 (2013). In *Vance*, the Supreme Court held that an employer can be vicariously liable for an employee's harassment "only when the employer has empowered that employee . . . to effect a 'significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Id.* at 431 (quoting *Burlington N.*, 548 U.S. at 761). There is no allegation in the AC that Ecker possessed any sort of comparable authority. To the contrary, the AC alleges that Ecker was a co-employee and that Ecker spoke to Plaintiff *as if* he were a subordinate. AC ¶ 31. Plaintiff next claims that ATPCO is liable for negligently failing to stop Ecker's retaliatory harassment after it knew of her actions. *See Feminist Majority Found. v. Hurley*, 911 F.3d 674, 694 (4th Cir. 2018) (stating that a coworker's retaliatory harassment could rise to the level of material adversity);

---

[5] Plaintiff's new legal theories appear nowhere in the AC, and ATPCO argues that Plaintiff cannot add these claims in an opposition brief. However, Rule 8(a)(2), Fed. R. Civ. P., requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Stanton v. Elliot*, 25 F.4th 227, 237–38 (4th Cir. 2022) (quoting *Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014)). As long as there is "[f]actual plausibility," a complaint "need not put a claim under a special heading . . . or use magic words to make out a claim." *Id.* Plaintiff's new theories for why his AC states a claim for relief are thus properly considered in ruling on ATPCO's motion to dismiss.

*Vance*, 570 U.S. at 427 (an "employer is directly liable for an employee's unlawful harassment if the employer . . . knew or reasonably should have known about the harassment but failed to take remedial action."). Plaintiff fails to plead ATPCO's negligence. Ecker's "berating and belittling emails" about Plaintiff are not materially adverse conduct.[6] Her celebration of Plaintiff's "milestone" birthday is not actionable.[7] Eckert's complaint against Plaintiff, like Plaintiff's complaint against Eckert, "is protected activity against under the law." MTD Order at 15. Plaintiff shows no causal nexus between Ecker's conduct and Plaintiff's protected activity. And ATPCO was not negligent in failing to respond. ATPCO informed Plaintiff how to opt-out of workplace milestones if Plaintiff did not wish to participate, ATPCO investigated Plaintiff's complaints, and ATPCO offered a team charter to address behavior expectations and team responsibilities to avoid future workplace tensions.

\*     \*     \*

In summary, Plaintiff has failed to allege facts to support a plausible claim of retaliation under the ADEA, Title VII, or the VHRA. Thus, Plaintiff's AC must be dismissed. Because Plaintiff has already been granted leave to amend, and because the new claims contained in Plaintiff's opposition would not save the AC, his claims are appropriately dismissed with prejudice.

Accordingly,

---

[6] *See Adams v. Anne Arundel Cty. Pub. Schs.*, 789 F.3d 422, 425, 431 (4th Cir. 2015); *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315–16 (4th Cir. 2008) ("callous behavior . . . or a routine difference of opinion and personality conflict . . . are not actionable); *Burlington N.*, 548 U.S. at 68 (explaining that "abusive language" is insufficient to show retaliation).

[7] *See Palmer v. Liberty Univ., Inc.*, 72 F.4th 52, 65 (4th Cir. 2023) (concluding that comments about retirement are not actionable); *Essa v. Genzyme Corp.*, 2020 WL 5983831, at \*13 (D.N.H. Oct. 8, 2020) (holding that wishing plaintiff happy birthday was not evidence of discriminatory animus).

It is hereby **ORDERED** that defendant's motion to dismiss (Dkt. 22) is **GRANTED** and the amended complaint (Dkt. 21) is **DISMISSED WITH PREJUDICE**.

It is further **ORDERED** that the Clerk of Court is **DIRECTED** close this case and place it among the ended causes.

The Clerk is directed to provide a copy of this Order to all counsel of record.

Alexandria, Virginia
December 19, 2023

T. S. Ellis, III
United States District Judge